UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> STATE OF ALABAMA, *ex rel.* ) <br> STEVE MARSHALL, ATTORNEY GENERAL, ) <br> AND THE ALABAMA DEPARTMENT ) <br> OF ENVIRONMENTAL MANAGEMENT, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ALABAMA & GULF COAST RAILWAY, LLC, ) <br> ) <br> Defendant. ) | Civil Action No. _____ |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Environmental Protection Agency ("U.S. EPA"), and the State of Alabama and Alabama Department of Environmental Management ("ADEM"), file this complaint and allege as follows:

## NATURE OF ACTION

1. This is a civil action brought against Defendant Alabama & Gulf Coast Railway, LLC ("AGR") seeking civil penalties for violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et. seq.*, the Alabama Water Pollution Control Act ("AWPCA"), Ala. Code § 22-22-1 *et seq.*, and the Alabama Environmental Management Act ("AEMA"), Ala. Code § 22-22A-1 *et seq.*, for the discharge of approximately 12,851 barrels of crude oil some of which entered a wetland, which is headwaters to a tributary of Lubbub Creek, and into the adjoining shorelines. Lubbub Creek flows into the Tombigbee River before eventually discharging into Mobile Bay. AGR's oil discharge resulted from a train derailment near Aliceville, Pickens County, Alabama.

## JURISDICTION, AUTHORITY, AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345; and CWA § 311(b)(7)(E) and (n), 33 U.S.C. § 1321(b)(7)(E) and (n). The Court has supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367 because the state law causes of action are so related to the United States' claims that they form part of the same case or controversy.

3. Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519; and CWA § 506, 33 U.S.C. § 1366.

4. Authority to bring this action on behalf of the State of Alabama is vested in the Attorney General under Ala. Code §§ 22-22A-5(12), 22-22A-5(18), and 22-22-9(m). ADEM is also authorized to bring an action under Ala. Code §§ 22-22A-5(12), 22-22A-5(18) and 22-22-9(m).

5. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391 and 1395; and CWA § 311(b)(7)(E), 33 U.S.C. § 1321(b)(7)(E), because it is the judicial district in which AGR conducted business and the judicial district in which the oil spill occurred.

## DEFENDANT

6. AGR is a railroad company that was formed in Delaware on June 12, 1997.

7. At all times relevant to this case, AGR maintained a principal place of business at 734 Hixon Road (Fountain), Monroeville, Alabama 36460, and its Registered Agent's address is CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

8. AGR is a "person" within the meaning of CWA § 301, 33 U.S.C. §§ 1311.

9. AGR is an "owner or operator" within the meaning of CWA § 301, 33 U.S.C. § 1311.

### FEDERAL STATUTORY AND REGULATORY REQUIREMENTS

10. CWA § 301(a), 33 U.S.C. 1311(a), prohibits "the discharge of any pollutant by any person," except in compliance with other sections of the CWA.

11. CWA § 502(12) defines the term "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

12. CWA § 502(7) defines "navigable waters" as "the waters of the United States including the territorial seas." 33 U.S.C. § 1362(7).

13. In turn, "waters of the United States" has been defined to include, *inter alia*: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; (ii) tributaries to such waters; and (iii) wetlands adjacent to the foregoing waters. 40 C.F.R. §§ 122.2 & 110.1 (1993).

14. Oil is a "pollutant" within the meaning of CWA § 502(6). 33 U.S.C. § 1362(6).

15. CWA § 502(14) defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to . . . any container [or] rolling stock."

16. CWA § 311(b)(3), 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or the environment of the United States.

17. Pursuant to CWA § 311(b)(4), 33 U.S.C. § 1321(b)(4), U.S. EPA, acting through its delegated authority under Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973) and Executive Order No. 12777, 56 Fed. Reg. 54757 (Oct. 18, 1991), has promulgated regulations

that define quantities of oil that may be harmful to the public health or welfare or the environment of the United States to include quantities of oil that, *inter alia,* "cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" or that "violate applicable water quality standards." 40 C.F.R. § 110.3.

18. CWA § 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), provides that "[a]ny person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of [CWA § 311(b)(3)], shall be subject to a civil penalty not to exceed $25,000 per day for each violation or an amount up to $1,000 per barrel of oil or unit of reportable quantity of hazardous substances discharged."

19. These penalty amounts have been adjusted upward for inflation pursuant to the Federal Civil Penalties Inflation Act of 1990, (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996, (Pub. L. 104-134, Sec. 31001(s). For each violation which takes place after January 12, 2009 through December 6, 2013, a civil penalty may be assessed in an amount up to $37,500 per day for each violation or up to $1,100 per barrel of oil discharged. 40 C.F.R. § 19.4.

20. CWA § 311(a)(2) defines "discharge" to include, but not be limited to, "any spilling, leaking, pumping, pouring, emitting, emptying, or dumping," but excludes certain authorized discharges not applicable in this case. 33 U.S.C. § 1321(a)(2).

21. CWA § 311(a)(10) defines "onshore facility" to mean any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land.

22.     Pursuant to CWA § 311(s), amounts received by the United States for actions brought under CWA § 311 shall be deposited in the "Oil Spill Liability Trust Fund" established under 26 U.S.C. § 9509 to, *inter alia,* fund cleanups of future discharges and substantial threats of discharges of oil.

## STATE STATUTORY AND REGULATORY REQUIREMENTS

23.     Section 22-22-9(i)(4) of the AWPCA declares any and all pollution to be a public nuisance.

24.     Section 22-22-9 of the AWPCA authorizes ADEM to require compliance with all water quality standards and effluent limitations and authorizes the Attorney General of the State of Alabama and ADEM to commence a civil action for damages caused by pollution to waters of the state.

25.     Section 22-22-9 of the AWPCA states that "[e]very person, prior to discharging any new or increased pollution into any waters of this state, shall apply to the commission [ADEM] in writing for a permit and must obtain such permit before discharging such pollution."

26.     Regulations promulgated under the AWPCA establish minimum standards applicable "to all State waters, at all places and at all times, regardless of their uses". ADEM Admin Code r. 335-6-10-.06.

27.     ADEM Admin. Code r. 335-6-10-.06(a) mandates that "State waters shall be free from substances attributable to sewage, industrial wastes or other wastes that will settle to form bottom deposits which are unsightly, putrescent, or interfere directly or indirectly with any classified water use."

28.     Pursuant to ADEM Admin. Code r. 335-6-10-.06(b) "State waters shall be free from floating debris, oil, scum, and other floating materials attributable to sewage, industrial

wastes or other wastes in amounts sufficient to be unsightly or interfere directly or indirectly with any classified water use."

29.     ADEM Admin. Code r. 335-6-10-.06(c) provides that "State waters shall be free from substances attributable to sewage, industrial wastes or other wastes in concentrations or combinations which are toxic or harmful to human animal or aquatic life to the extend commensurate with the designated usage of such waters."

30.     ADEM Admin. Code r. 335-6-8-.05(1)(a) prohibits "[t]he discharge of fluids and/or pollutants to ground water and/or to soils which may result in a discharge of fluids and/or pollutants to ground water which is not authorized and in compliance with a permit issued under the provisions of this chapter."

## GENERAL ALLEGATIONS

**A.    Background**

31.     At all times relevant to this proceeding, AGR owned or operated railroad trains that transported crude oil through the State of Alabama.

32.     AGR operates tanker trains on owned or leased tracks that connect to export terminals in Pensacola, Florida; Columbus, Mississippi; Mobile, Alabama; and Kimbrough, Alabama.

**B.    The Discharge of Oil**

33.     On November 7, 2013, at approximately 11:40pm CST, an AGR multi-car train ("AGR's Train") derailed at or near Milepost 683, Highway 14 and Highway 2 just outside the City of Aliceville, Pickens County, Alabama.

34. At the time of the derailment, AGR's Train was transporting approximately 17,851 barrels of Bakken Shale crude oil and it was in route from Amory, Mississippi to Walnut Hill, Florida.

35. As a result of the derailment, twenty-six tanker cars of AGR's Train fell into the wetland, which is headwaters to an unnamed perennial tributary that flows to Lubbub Creek less than a mile downstream (hereafter "Unnamed Tributary"). Lubbub Creek flows approximately 2.5 miles into the Tombigbee River before eventually discharging into Mobile Bay.

36. AGR's Train derailment caused the discharge of approximately 12,851 barrels of crude oil from its tanker cars into the environment, including into the wetland and the adjoining shorelines ("Oil Discharge").

37. Immediately after the derailment, AGR's Oil Discharge ignited and caused explosions and harms to the natural resources in and surrounding the wetland and the adjoining shorelines, including causing approximately 453 dead fish and eight dead mammals, reptiles, and amphibians.

C.     **Cleanup Activities**

38. At the time of the Oil Discharge, approximately five thousand (5,000) barrels of AGR's oil remained in tanker cars and were recovered without being released into the environment.

39. In response to the derailment and Oil Discharge, U.S. EPA ordered AGR to undertake work measures to remediate the wetland, the Unnamed Tributary, and adjoining shorelines.  AGR fully complied with the order.

40. Through several site visits to the derailment/spill site and through information requests served to AGR, U.S. EPA confirmed AGR's Oil Discharge and that a sheen, sludge,

emulsion or exceedance of water quality standards occurred in the wetland and the adjoining shorelines.

**D.      Waters at the Spill Site**

41.     The wetland is adjacent to, and is headwaters to, the Unnamed Tributary.

42.     The Unnamed Tributary is a perennial stream with a distinct streambed and banks and ordinary high water mark throughout its flow path to Lubbub Creek, less than a mile downstream.

43.     The wetland, either alone or in combination with similarly situated wetlands in the region, provides food, shelter, and a spawning and nursery area for fish that inhabit Lubbub Creek and the Tombigbee River.

44.     The wetland provides a filtering function that contributes to the integrity of these downstream waters (Lubbub Creek and the Tombigbee River).

45.     There is an uninterrupted flow path that is capable of transporting pollutants from the point of discharge in the wetland, through the Unnamed Tributary, to Lubbub Creek and the Tombigbee River.

46.     Lubbub Creek and the Tombigbee River are critical habitats for several species, including the endangered southern clubshell mussel.

47.     Lubbub Creek and the Tombigbee River also support healthy fisheries and provide commercial and recreational fishing opportunities.

48.     Lubbub Creek is navigated by recreational and/or commercial boats.

49.     The wetland, either alone or in combination with similarly situated wetlands in the region, significantly affects the chemical, physical, and/or biological integrity of Lubbub Creek and the Tombigbee River.

50. The wetland is a "navigable water[s]" within the meaning of Sections 311(b)(3) and 502(7) of the Act, 33 U.S.C. §§ 1321(b)(3) and 1362(7).

## FEDERAL CLAIM FOR RELIEF

51. Paragraphs 1 through 50 are realleged and incorporated by reference.

52. The crude oil discharged from AGR's Train is "oil" within the meaning of CWA § 311(a)(1), 33 U.S.C. § 1321(a)(1).

53. AGR's Train was an "onshore facility" within the meaning of CWA § 311(a)(10), 33 U.S.C. § 1321(a)(10).

54. The crude oil from AGR's tanker cars was discharged into or upon navigable waters of the United States or adjoining shorelines in a quantity sufficient to cause a sheen, sludge, emulsion and/or violation of water quality standards – "a quantity as may be harmful" in violation of CWA § 311(b)(3), 33 U.S.C. § 1321(b)(3), and 40 C.F.R. § 110.3.  The discharge was not in compliance with the CWA.

55. Pursuant to CWA § 311(b)(7)(A) and (D), 33 U.S.C. § 1321(b)(7)(A) and (D), AGR is liable for a civil penalty in an amount up to $37,500 per day of violation or an amount up to $1,100 per barrel of oil discharged.

## STATE CLAIM FOR RELIEF

56. Paragraphs 1 through 55 are realleged and incorporated herein by reference.

57. The discharges resulting from the derailment described in the preceding counts violated Section 22-22-9 of the AWPCA and ADEM regulations referenced in the preceding counts.

58. Pursuant to Section 22-22A-5(18)(c), each day such violation continues constitutes a separate violation of the AWPCA.  For each such violation and for each day that such violation

continued, Defendant is liable for civil penalties of up to $25,000 per day of violation to the State of Alabama and ADEM.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America, the State of Alabama, and the Alabama Department of Environmental Management respectfully request that this Court:

1. Enter a judgment against Defendant Alabama and Gulf Coast Railway for civil penalties in an amount to be determined at trial not to exceed the statutory maximum ;

2. Enter a judgment against Defendant Alabama and Gulf Coast Railway and award the State of Alabama and ADEM civil penalties in an amount to be determined at trial not to exceed the statutory maximum of up to $25,000 per day of violation for violations of the Alabama Water Pollution Control Act and underlying regulations.

3. Award the Plaintiffs their costs in this action; and

4. Grant the Plaintiffs such other relief as this Court deems appropriate.

Respectfully Submitted,

FOR THE UNITED STATES

*s/ Ellen M. Mahan*
ELLEN M. MAHAN
 Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

*s/ James R, MacAyeal*
JAMES R. MacAYEAL
Senior Counsel
Environmental Enforcement Section

        United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
jamie.macayeal@usdoj.gov
Telephone: (202) 616-8777

PRIM F. ESCOLONA
United States Attorney
Northern District of Alabama

*s/ Edward Q. Ragland*
EDWARD Q. RAGLAND
Assistant United States Attorney
1801 4th Avenue North
Birmingham, Alabama 35203
ed.ragland@usdoj.gov
Telephone:  (205) 244-2109

OF COUNSEL:

Stephen P. Smith
Associate Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

Erin Grisby
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance (OECA)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW (MC: 2243A)
Washington, DC 20004


        FOR THE STATE OF ALABAMA AND ADEM

STEVE MARSHALL
ATTORNEY GENERAL
*/s/ Robert D. Tambling*

Robert D. Tambling (TAM001)
*Assistant Attorney General*

ADDRESS OF COUNSEL:
Office of Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Robert.Tambling@AlabamaAG.gov


STEVE MARSHALL
ATTORNEY GENERAL
*/s/ Anthony Todd Carter*
Anthony Todd Carter
*Assistant Attorney General and*
*Associate General Counsel*

ADDRESS OF COUNSEL:
Alabama Department of Environmental
    Management
Office of General Counsel
Post Office Box 301463
Montgomery, Alabama  36130-1463
(334) 271-7855
atcarter@adem.alabama.gov